***********
The Full Commission has reviewed the prior Decision and Order based upon the record of the proceedings before Deputy Commissioner Glenn, and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission REVERSES the Deputy Commissioner's Decision and Order and enters the following Decision and Order REOPENING this case for evidence on plaintiff's damages.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to mis-joinder or non-joinder of parties and of the subject matter.
3. The parties have stipulated into evidence the following documents:
a. North Carolina Uniform Citation #1, dated August 21, 1997;
b. North Carolina Uniform Citation #2, dated August 21, 1997;
c. Curriculum vitae of Norman S. Beck;
 d. State of North Carolina warrant for arrest of Keith Lamont Hillsman for being a fugitive from justice from the State of Maryland, dated August 21, 1997;
 e. State of North Carolina fugitive affidavit, dated August 21, 1997;
f. Law enforcement appendix, dated August 21, 1997;
 g. Written decision of judicial official on determination of secured bond;
h. NCIC hit, dated August 21, 1997;
i. Deposition of Norman S. Beck, video-taped November 6, 2001; and
 j. Confidential investigative report by Mar-Beck Consultant and Investigative Services, Inc., dated October 2, 2001.
 ***********
Based upon all the competent evidence of record, and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. On the morning of August 21, 1997, plaintiff was stopped by North Carolina State Highway Patrol Trooper E.L. Melvin for traveling at 76 miles per hour in a 65 miles per hour zone on Interstate 85 in Guilford County. The plaintiff was driving a 1998 Dodge Caravan and was en route to Charlotte, North Carolina, with a friend and co-worker, Mark Thompson, who owned the vehicle.
2. Upon approaching plaintiff's vehicle, Trooper Melvin asked plaintiff to produce his driver's license and registration. The plaintiff could not produce his driver's license because he left it at home, but was able to recite his driver's license and social security numbers to the trooper and provided a business card and a photographic college I.D. from North Carolina Central University. Additionally, plaintiff was unable to provide the vehicle's registration because it was not in the possession of the vehicle's owner, Mr. Thompson, as the car was purchased only a few days prior.
3. Trooper Melvin returned to his patrol car and radioed in the information given to him by plaintiff as well as the license plate number of the vehicle. Steve Evans, the telecommunicator to whom Trooper Melvin was speaking, advised Trooper Melvin that the driver's license number given by plaintiff was valid and belonged to Keith Lamont Hillsman, but the license plate registration showed the vehicle's license plate belonged to a different vehicle. Trooper Melvin walked back to the plaintiff's vehicle and asked plaintiff to accompany him to Trooper Melvin's patrol car to discuss the license plate situation further.
4. At the patrol car, plaintiff explained that the vehicle belonged to a friend and, according to Trooper Melvin's testimony, gave conflicting information as to the purpose of his planned trip to Charlotte that day. While discussing the situation with plaintiff, Trooper Melvin was interrupted by the telecommunicator, who communicated a code for the trooper to pick up the telephone handset in his vehicle so they could discuss additional information privately. The telecommunicator then requested additional information about the plaintiff, including plaintiff's race, social security number, physical description, height and weight, and date of birth. Trooper Melvin asked the plaintiff for such information as was not obvious to him, and relayed the same back to the telecommunicator. Based on this exchange, the telecommunicator advised Trooper Melvin that he believed plaintiff was not Keith Lamont Hillsman but was actually James Bernard Davis, a fugitive wanted for arrest in Maryland. The telecommunicator had concluded such after consulting with the National Crime Information Center (NCIC), a national criminal database. From the record, it appears the cause of the telecommunicator's suspicion was that the fugitive was known to have used Keith Lamont Hillsman (the plaintiff's name) as an alias, along with about fifteen other names.
5. The fugitive, James Bernard Davis, was listed by the NCIC as 5'11" tall, whereas the plaintiff is 6'7" tall, a difference of 8 inches. The fugitive was born in 1960, and the plaintiff was born in 1973, a difference of 13 years. The fugitive weighed 140 pounds, and the plaintiff weighed about 220 pounds, a difference of 80 pounds. The fugitive had noted scars on his lip, chin, right ear, left arm, and on both cheeks of his face. The plaintiff had none of such identifying marks. The only apparent physical similarity between the plaintiff and the fugitive is that they are both black.
6. Trooper Martin denies that he was privy to the fugitive's physical description as contained in the NCIC database at the time he had the plaintiff in his patrol car, and that he was acting solely on the telecommunicator's advice when he decided to arrest the plaintiff. However, the plaintiff gave testimony that he was in fact able to overhear the entire conversation between Trooper Melvin and the telecommunicator, and that the telecommunicator did give Trooper Melvin the physical description of the wanted fugitive.
7. The telecommunicator advised Trooper Melvin that the NCIC file on the fugitive contained a note that Maryland would only extradite from surrounding states, but that he would contact Maryland to see if they would extradite from North Carolina.
8. Based upon the above communication with the telecommunicator, Trooper Melvin placed the plaintiff under arrest for displaying a fictitious license plate on a vehicle, and for being a fugitive wanted for arrest in Maryland. Upon arrest, Trooper Melvin took the plaintiff to the magistrate's office.
9. Before appearing before the magistrate, Trooper Melvin was required to execute a Fugitive Affidavit to be appended to the magistrate's Warrant for Arrest. The Fugitive Affidavit, a standard form used by the State of North Carolina, states that the officer or affiant signing the affidavit has been duly sworn and that by signing his name thereto, states for the record that, among other things, he has attached a copy of the NCIC-PIN report, which contains the physical description of the wanted fugitive. Trooper Melvin, sworn under oath, noted on the Fugitive Affidavit that he had attached the NCIC report to the affidavit, but he had not. Trooper Melvin testified that he never saw the copy of the NCIC report and that it was the magistrate issuing the Fugitive Warrant who later attached the NCIC report.
10. As Trooper Melvin admitted at hearing before the Deputy Commissioner, he neither attached the NCIC report to the Fugitive Affidavit, nor did he ever have it in his possession. Consequently, he admittedly did not read the NCIC report. In fact, Trooper Melvin testified that he never laid eyes on the NCIC report until a few years later when an Internal Affairs agent was investigating the matter. The NCIC report clearly listed the physical description of the wanted fugitive, including date of birth, height, weight, identifying marks (numerous scars), and a social security number that did not match the plaintiff's social security number. Upon reading such information, it would be clear to any prudent officer that the plaintiff and the fugitive were not the same person.
11. Based upon the Fugitive Affidavit sworn to by Trooper Melvin, Magistrate J.A. Williams issued an Arrest Warrant for the plaintiff, therein stating that plaintiff was James Bernard Davis, a fugitive from justice from Maryland. Plaintiff's bond was set at $100,000.00, and the plaintiff was held in jail without cause for two days.
12. Trooper Melvin had a legal duty owed to the plaintiff to exercise due care in assessing whether the plaintiff was the wanted fugitive by simply comparing the plaintiff's physical description with that of the fugitive as given on the NCIC report. Trooper Melvin never compared the vastly differing physical descriptions of plaintiff and the fugitive and, thus, breached his duty of care owed to the plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Under the Tort Claims Acts, negligence is determined by the same rules applicable to private parties. Bolkir v. N.C. State Univ.,321 N.C. 706, 709 (1998). Plaintiff has shown that the injuries, or damages, he sustained were the proximate result of a negligent act of Trooper Melvin, a state employee acting in the course and scope of his employment. N.C. Gen. Stat. § 143-291. The plaintiff was arrested and held without cause for two days because Trooper Melvin failed to read the NCIC report giving the physical description of the wanted fugitive before appending it to the Fugitive Affidavit, which he swore thereto.
2. The Plaintiff has established actionable negligence by showing that Trooper Melvin failed to exercise due care in the performance of a legal duty owed to plaintiff under the circumstances. Bolkir at 900. Due diligence requires an officer of the law to read the NCIC report prior to appending it to the Fugitive Affidavit so as to ensure that the person under arrest matches the physical description of the wanted fugitive. Trooper Melvin had a legal duty owed to the plaintiff to exercise due care in assessing whether the plaintiff was the wanted fugitive by simply comparing the plaintiff's physical description with that of the fugitive as given on the NCIC report. Trooper Melvin never read the NCIC report before executing a sworn affidavit to its purpose. Consequently, Trooper Melvin never compared the vastly differing physical descriptions of plaintiff and the fugitive and, thus, breached his duty of care owed to the plaintiff.
3. As a result of Trooper Melvin's breach of the above-mentioned duty, the defendants are liable to plaintiff for damages sustained as a consequence of such breach. N.C. Gen. Stat. § 143-291.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
The decision of the Deputy Commissioner regarding the defendant's negligence in this matter is hereby REVERSED. This case is REOPENED for the taking of evidence as to plaintiff's damages so that an award can be made pursuant to N.C. Gen. Stat. § 143-291. The parties shall have 60 days from the filing date of this Decision and Order within which to stipulate as to plaintiff's damages or take depositions with respect thereto. This panel of the Full Commission retains jurisdiction of this matter awaiting such evidence.
This 27th day of September 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER